IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

**PENNY RENEE FULLER**,

    Plaintiff                  Civil No. 08-1473-MO

  v.                      OPINION AND ORDER

**MICHAEL J. ASTRUE**,
Commissioner of Social Security,

    Defendant.

**MOSMAN, J.,**

  Plaintiff Penny Fuller challenges the Commissioner's decision finding her not disabled under Title II of the Social Security Act and denying her application for Disability Insurance Benefits ("DIB"). The Court has jurisdiction under 42 U.S.C. § 405(g). For the reasons stated below, I AFFIRM the Commissioner's decision.

## PROCEDURAL BACKGROUND

  Ms. Fuller protectively filed for DIB and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act on March 11, 2005. AR 23, 112, 438.[1] After the

---

[1] Citations to "AR" refer to indicated pages in the official transcript of the administrative record filed with the Commissioner's Answer on May 15, 2009 (#12).

Commissioner denied these applications, an Administrative Law Judge ("ALJ") held a hearing on July 3, 2007 and a supplemental hearing on December 5, 2007, finding Ms. Fuller not disabled on March 24, 2008. AR 40, 71, 30. The Appeals Council denied review on August 18, 2008. AR 15-18. Ms. Fuller subsequently submitted new evidence, but the Appeals Council declined to reopen its decision and the Commissioner's decision became final on November 24, 2008. AR 6-14. Ms. Fuller timely appealed to this court on December 22, 2008.

## THE ALJ'S FINDINGS

The ALJ made his decision based upon the five-step sequential process established by the Commissioner. *Bowen v. Yuckert*, 482 U.S. 137, 140-41 (1987); *see also* 20 C.F.R. §§ 404.1520, 416.920 (establishing the five-step evaluative process for DIB and SSI claims). The ALJ found that Ms. Fuller has severe impairments from "degenerative disc disease; and obesity," but also found that neither of these impairments, either separately or in combination, met or equaled a disorder listed in the Commissioner's regulations. AR 25.

After evaluating the record, the ALJ assessed Ms. Fuller's residual functional capacity ("RFC"):

> [T]he claimant has the residual functional capacity to perform sedentary work in terms of lifting or carrying 10 pounds occasionally and less than 10 pounds frequently . . . . The claimant is also able to stand or walk for 2 hours out of 8 hours; sit for 6 hours out of 8 hours; and has an unlimited ability to push or pull within the weight specified. Postural limitations are that she must never balance and only occasionally kneel. She must also avoid all exposure to hazards.

AR 27. At Step Four, the ALJ found Ms. Fuller unable to perform past relevant work, despite the fact that she previously worked as a cashier, which the ALJ determined she could do at a sedentary level, as described below. AR 29. The ALJ advanced to Step Five because the

PAGE 2 - OPINION AND ORDER

Dictionary of Occupational Titles ("DOT") classifies cashier jobs as light, not sedentary, making the *exact* number of sedentary cashier jobs unknown. AR 29-30.

Based on the separate testimony of two vocational experts, the ALJ concluded that Ms. Fuller's RFC enables her to participate in occupations that exist in significant numbers in the national economy, which require no transferable skills, such as small product assembly, packing and sorting, and sedentary cashiering. AR 29-30. The ALJ also found that Ms. Fuller acquired work skills from her prior work that are transferrable to occupations that exist in significant numbers in the national economy. AR 29. Because the ALJ concluded that Ms. Fuller is capable of gainful employment, the ALJ found that she was not disabled within the meaning of the Social Security Act.

## STANDARD OF REVIEW

I review the Commissioner's decision to ensure the Commissioner applied proper legal standards and that his findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009). "'Substantial evidence' means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (citing *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)). The Commissioner's decision must be upheld if it is a rational interpretation of the evidence, even if there are other possible rational interpretations. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The reviewing court may not substitute its judgment for that of the Commissioner. *Robbins*, 466 F.3d at 882. Finally, "the court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was

inconsequential to the ultimate nondisability determination." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citation omitted).

## ANALYSIS

Ms. Fuller contends that the ALJ's decision should be reversed because the ALJ committed legal errors in reaching his decision and the decision is not based on substantial evidence. Specifically, Ms. Fuller argues that the vocational experts' ("VEs'") testimony was vague and unsupported by scientifically adequate evidence. (Pl.'s Opening Br. (#19) 3.) She also argues that the ALJ failed to properly consider her obesity and erred at Step Three by not determining that Ms. Fuller's combined impairments equaled Listing 1.04. (*Id.*) Finally, Ms. Fuller argues that the Appeals Council improperly rejected new evidence submitted after the ALJ's decision. (*Id.* at 4.) Based on the following analysis, I hold that the ALJ did not commit legal error and the ALJ's decision is supported by substantial evidence in the record.

### I.    ALJ's Vocational Finding

Ms. Fuller argues that the ALJ's vocational finding—that she can perform jobs in the national economy—is not supported by legally adequate vocational testimony. (*Id.* at 13.) Her argument proceeds in two parts.

#### A.    *Transferable Skills*

First, she argues that the ALJ made an "erroneous and inexplicable" finding regarding transferable skills. (*Id.*) The ALJ did find that Ms. Fuller "acquired work skills from past relevant work that are transferable to other occupations with jobs existing in significant numbers in the national economy." AR 29. In support of her argument that this finding warrants remand, Ms. Fuller cites to Social Security Ruling ("SSR") 82-41, which requires the ALJ to "make certain

findings of fact and include them in the written decision" in circumstances where "the issue of skills and their transferability *must be decided*." (*See* Pl.'s Opening Br. (#19) 13 (quoting SSR 82-41 at 6)) (emphasis added).

Ms. Fuller correctly argues that SSR 82-41 requires specific findings in decisions involving transferability of skills, but neglects to address that the same ruling also states "the regulations take administrative notice . . . of the existence of unskilled sedentary, light, and medium jobs in the economy." (*See* Pl.'s Opening Br. (#19) 13 (quoting SSR 82-41 at 6).) Furthermore, the ruling states that the issue of transferable skills applies only when the Commissioner identifies semi-skilled or skilled occupations at Step Five. SSR 82-41 at 2. Here, all three jobs referenced in the ALJ's decision represent "sedentary unskilled work." AR 29. These jobs do not require a finding that Ms. Fuller previously acquired any skills, and the ALJ's reference to transferable skills is superfluous to his conclusion that Ms. Fuller can perform various unskilled occupations.[2] As described below, the ALJ's finding that Ms. Fuller can perform sedentary unskilled jobs that exist in substantial numbers in the national economy remains supported by substantial evidence, independent of any previously acquired or transferable skills.

    B.    ***DOT Deviation—Sedentary Cashier***

Second, Ms. Fuller contends that the ALJ erred by making a "Step 4 1/2" finding instead

---

[2] Even if the ALJ's reference to transferable skills constituted a legal error in his analysis, as Ms. Fuller contends, any such error would be harmless. *See Tommasetti*, 533 F.3d at 1038; *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008) (holding that an ALJ's error regarding credibility is harmless if the "decision remains legally valid, despite such error").

PAGE 5 - OPINION AND ORDER

of a proper Step Five finding. (Pl.'s Opening Br. (#19) 14.) She does not dispute the ALJ's determination at Step Four that she cannot perform past work, but she contends that the VEs' testimony contradicted the DOT without any evidence to support the deviation. (Pl.'s Opening Br. (#19) 14.)

At the first hearing, on July 3, 2007, the ALJ called VE Gary Jesky to testify. AR 61-69. Mr. Jesky concluded that Ms. Fuller cannot perform her past work—including jobs as a pantry goods maker, cashier, retail sales clerk, housekeeper, day care worker, fast food worker, and sandwich maker—because each job qualified, or was performed, as light work. AR 62-63.

The ALJ then proceeded to Step Five[3] and posed a hypothetical to Mr. Jesky based on the RFC determination above. AR 63. Mr. Jesky concluded that Ms. Fuller could perform sedentary unskilled jobs such as small products assembly or packing and sorting, of which there are 1800 statewide. *Id.* He also testified that she could perform unskilled "cashiering jobs that are performed at the sedentary level." *Id.* Despite the DOT's classification of cashiering as light work, "there are jobs such as people who work at the parking structures . . . where sitting is essentially involved in the job," making it sedentary instead of light. *See id.* Mr. Jesky testified that more than 1000 sedentary cashier jobs exist at the state level and more than 100,000 nationally. *Id.* Because sedentary cashier jobs are not separately listed by DOT, Mr. Jesky arrived a those numbers based on his experience and his prior research. AR 66. Ms. Fuller argues that because Mr. Jesky's specific research on parking structure cashier jobs might be more than five

---

[3] I read Ms. Fuller's argument as contending that the ALJ erred at Step Five, not that the ALJ did not make a Step Five finding, given the explicit reference to Step Five in the ALJ's decision. AR 29 ("Accordingly, the claimant is unable to perform past relevant work . . . . Consequently, I am proceeding to the next step of the analysis.")

years old, his testimony is speculative and improper. (*See* Pl.'s Opening Br. (#19) 15.)

Following a consultative evaluation of Ms. Fuller by an orthopedic specialist, the ALJ held a supplemental hearing and called VE Richard Keough. AR 75-81. Based on the transcript, it appears that the primary purpose for Mr. Keough's testimony was to further explore the sedentary cashier position. *See* AR 75-76. Mr. Keough agreed with the prior assertion by Mr. Jesky that sedentary cashier positions exist despite the DOT classification as light work. AR 76. He also testified that the number of sedentary cashier jobs in the local and national economy is "determined . . . by direct experience as a vocational counselor." *Id.* He went on to explain "VE[s] are in the position of giving their best guess based on actual jobs that they've seen and jobs that the[y] place people in over the course of their . . . career." *Id.* Mr. Keough explained that he estimates the number of sedentary cashier jobs by reducing the number of total cashier positions estimated by the DOT and the Employment Department by half, to arrive at a "conservative" estimate. AR 77-78. He testified that 32,000 Oregon "cashier II" positions exist, so roughly half of those positions are likely sedentary, and some number may be classified as semiskilled rather than unskilled.[4] AR 78-80.

Ms. Fuller argues that the ALJ erred by accepting the VEs' explanations for variance from the DOT's classification of cashier as light work without a "reasonable explanation" as required by *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007). (Pl.'s Opening Br. (#19) 14.) In

---

[4] Mr. Keough did not give a precise estimate of sedentary unskilled cashier positions, but rather testified about the methodology by which he would arrive at such a number. *See* AR 76-80. Although it appears that his estimate of sedentary unskilled cashier positions could be higher than Mr. Jesky's, the ALJ used the more precise, more conservative estimate from Mr. Jesky in his written decision. *See* AR 29.

PAGE 7 - OPINION AND ORDER

support, she cites an unpublished opinion from this district, which held the ALJ's vocational finding was not based on substantial evidence when "the VE was not able to testify as to the number of jobs of this type available in the United States" primarily because "the Employment Division does not track this type of job." (Pl.'s Opening Br. (#19) 15 (quoting *Nguyen v. Astrue*, Civil No. 06-1739-AA (D. Or. Feb. 28, 2008).) In *Nguyen*, however, the VE's testimony did not relate to a subcategory of a known, tracked occupation, such as a cashier. Instead, the VE in *Nguyen* attempted to quantify the number of jobs existing in the national or local economy that matched the plaintiff's past work as a street peddler in her native Vietnam—an occupation the DOT does not categorize or track at all. (*See* 06-1739-AA Op. & Order (#26) 6.) There, the DOT did not provide *any* guidance, the VE did not have professional expertise or knowledge of the occupation, and there was no evidence that the plaintiff performed street peddler work on a full-time basis. (*Id.*) Under those circumstances, the VE's testimony could not provide a reasonable basis to deviate from the DOT.

      Here, the VEs who testified were well-qualified, and both were knowledgeable on the subject of sedentary cashiering positions. The mere fact that the DOT does not quantify this exact subcategory does not render the testimony unsupported. The time gap since Mr. Jesky last conducted his own research on the precise number of parking structure cashiers does not diminish his knowledge of the occupation or his professional experience in evaluating those positions generally. Nor does Mr. Keough's description of the methodology by which a VE quantifies sedentary cashier positions ("best guess") somehow make the testimony unreasonable or unreliable. When the precise quantity of specific positions is not reported in the DOT, the ALJ

must depend on a VE's "best guess based on actual jobs that they've seen and jobs that the[y] place people in over the course of their . . . career." Without such VE testimony, the ALJ has no other way of determining the number of jobs available. I find that the VEs in this case provided a "reasonable explanation," at a minimum, of the number of sedentary cashier positions as required by *Massachi*. Therefore, the ALJ's Step Five finding that Ms. Fuller can perform "a significant number of jobs in the national economy" is supported by substantial evidence.

## II.     ALJ's Consideration of Obesity

Ms. Fuller contends that the "ALJ properly found, at Step 2, that her obesity was a severe impairment, but then did not consider it in combination with her mental impairments" and her degenerative disc disease. (Pl.'s Opening Br. (#19) 15.) Ms. Fuller alleges that "the ALJ did not believe" her testimony that her obesity causes functional limitations. (*Id.* at 16 (citing AR 28).) I disagree. The ALJ found that Ms. Fuller's "medically determinable impairments [including obesity] could reasonably be expected to produce the alleged symptoms," including functional limitations. *See* AR 28. The ALJ was not convinced, however, that "the intensity, persistence and limiting effects of these symptoms" were as severe as Ms. Fuller described, based on inconsistencies between Ms. Fuller's testimony and the objective record. *Id.*

The ALJ properly found that Ms. Fuller's obesity constitutes a severe impairment, and discussed her weight throughout his analysis of her physical limitations and the objective evidence in the record. AR 25-26. He concluded, based on consulting orthopedic physician Dr. Keenan's report, that Ms. Fuller's "primary impairment is her obesity which increases her back pain." AR 28; *see also* AR 249-52. Again, the ALJ did not disbelieve Ms. Fuller's contention that

she suffers from back pain, but rather found that she "exaggerated the *degree* of her impairment." AR 26 (emphasis added). Because the ALJ found no evidence in the objective record of positive straight-leg raising test, nerve root compression, or significant central canal or foraminal narrowing related to her mild degenerative disc disease, he concluded that "obesity alone" does not equal the 1.04 listing Ms. Fuller purports to satisfy. *See* AR 26-28; *see also* AR 402, 405-06, 422; Listing 1.04. Ms. Fuller also contends that the ALJ misunderstood the relationship between her obesity and the need for surgery, mistaking the failure of any physician to recommend surgery as a conclusion that she did not need surgery. (Pl.'s Opening Br. (#19) 16.) The ALJ referred to the fact that no physician recommended surgery for Ms. Fuller, but also explained that Dr. Keenan recognized "she was not a surgical candidate in the absence of significant weight reduction." *See* AR 27, 249. The record reflects full consideration of Ms. Fuller's impairments throughout the five-step process.

## III.  New Evidence

Ms. Fuller finally contends that the case should be remanded for consideration of new evidence submitted to the Appeals Council after it denied review. (Pl.'s Opening Br. (#19) 17.) Ms. Fuller claims the new evidence "consists of a clear opinion of disability" and diminishes the ALJ's credibility findings by "lend[ing] credibility to [her] reports of continuing and worsening pain." (*Id.* at 17-18.)

"Remand for the consideration of new evidence is appropriate if a claimant presents evidence that is material to determining disability, and there is good cause for failure to produce the evidence earlier." *Wainwright v. Sec'y of Health & Human Servs.*, 939 F.2d 680, 682 (9th Cir.

1991) (citation omitted); *see also* 42 U.S.C. § 405(g). New evidence is material if it bears directly and substantially on the matter in dispute, and if it has a reasonable possibility of changing the outcome. *Mayes v. Massanari*, 276 F.3d 453, 462 (9th Cir. 2001). It is well established that the good cause requirement is not met "simply by obtaining a more favorable report from an expert witness once [the] claim is denied." *Wainwright*, 939 F.2d at 682 (quoting *Clem v. Sullivan*, 894 F.2d 328, 332 (9th Cir. 1990)). Rather, the claimant "must establish good cause for not seeking the expert's opinion prior to the denial of [the] claim." *Clem*, 894 F.2d at 332 (citing *Key v. Heckler*, 754 F.2d 1545, 1551 (9th Cir. 1985)); *see also Weetman v. Sullivan*, 877 F.2d 20, 23 (9th Cir. 1989) (physician's "opinion [found] all the less persuasive since it was obtained . . . only after the ALJ issued an adverse determination").

Ms. Fuller submitted a letter and report from Dr. Kellogg, an orthopedic specialist, describing the results of a June 25, 2008 MRI that showed "a large disc herniation at L5-S1 resulting in S1 nerve root compromise." AR 10. Dr. Kellogg's report also describes Ms. Fuller's "[m]oderate degenerative disc disease L4-5," a "[n]egative straight leg raising test," and no significant "central canal or foraminal narrowing and minimal narrowing of both lateral recesses." AR 11, 12, 14. Ms. Fuller argues that "the ALJ rejected [her] report of pain [because] she had not sought orthopedic treatment," and this new orthopedic evidence now undermines the ALJ's finding that she is not disabled. I disagree.

While the ALJ noted that Ms. Fuller's failure to see an orthopedic physician for two years prior to his decision "undermines the extent of the orthopedic impairment claimed by her," she did receive an orthopedic evaluation during the time between the two hearings, including an MRI

on August 27, 2007, "and that evaluation was entered into the record." (Pl.'s Opening Br. (#19) 12, 17; *see also* AR 26.) The ALJ specifically referenced "[t]he most recent x-rays" and the "August 27, 2007 MRI," which together showed "mild degenerative disc disease" (AR 26, 405) and "a bulging disc without definitive nerve root impingement" (AR 26, 406). The ALJ based his finding of no disability on substantial evidence in the record at the time of his decision, which included additional orthopedic analysis and an MRI following the first hearing. The evidence now presented by Ms. Fuller is "simply . . . a more favorable report from an expert witness" after her claim was denied, failing to meet the good cause requirement. *See Wainwright*, 939 F.2d at 682.

      Even if the new evidence met the good cause requirement, I am not confident that it has a reasonable possibility of changing the outcome. The new evidence does show nerve root compression, but Dr. Kellogg's report explains that the symptom is caused by Ms. Fuller's "large disc herniation," which likely did not exist before the ALJ's decision. AR 11, 13; *see also* AR 406 (describing evidence of a "diffusely bulging disc" on the August 27, 2007 MRI, but no mention of a herniation or nerve root compromise); *Mayes*, 276 F.3d at 462 (finding that evidence of a November 2007 disc herniation did not establish a reasonable probability that the condition existed at the time of the hearing six months earlier). Also, her straight leg raising test continues to be negative and Dr. Kellogg found no significant "central canal or foraminal narrowing." AR 11-12. I conclude that the Commissioner's conclusion should not be disturbed on the basis of the new evidence submitted for the court's consideration.

**CONCLUSION**

The Commissioner's decision that Ms. Fuller does not suffer from disability and is not entitled to benefits under Title II of the Social Security Act is based upon correct legal standards and supported by substantial evidence. Therefore, the Commissioner's decision is AFFIRMED and Ms. Fuller's appeal is DISMISSED.

IT IS SO ORDERED.

Dated this  30th  day of March, 2010.

/s/ Michael W. Mosman
MICHAEL W. MOSMAN
United States District Judge